Filed 6/10/13 (second of two modifications; opinion filed 4/26/13 and mod./pub. order filed 5/15/13 follow)

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL LEWIS,<br><br>    Defendant and Appellant. | E055569<br><br>(Super.Ct.No. FVI900076)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

The petition for rehearing filed on May 30, 2013, is denied.  The opinion filed in this matter on April 26, 2013, and modified on May 15, 2013, is modified as follows:

On page 8, remove footnote 5, and modify the first sentence of the last paragraph.

The first two sentences of the last paragraph on page 8 should read as follows:

Neither defendant's current offenses nor his strike priors disqualify him for resentencing pursuant to section 667(e)(2)(C).  Defendant contends, therefore, that upon

1

remand for resentencing, the trial court must sentence him pursuant to section

667(e)(2)(C).

These modifications do not change the judgment.

CERTIFIED FOR PARTIAL PUBLICATION

McKINSTER
J.

We concur:


HOLLENHORST
Acting P. J.


CODRINGTON
J.

2

Filed 4/26/13  Certified for partial publication as modified 5/15/13 (mod. and pub. order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

MICHAEL LEWIS,

    Defendant and Appellant.

E055569

(Super.Ct.No. FVI900076)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Eric M. Nakata, Judge.  Affirmed as modified; remanded for resentencing.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting, Tami Falkenstein Hennick, and Ifeolu E. Hassan, Deputy Attorneys General, for Plaintiff and Respondent.

1

# INTRODUCTION

This is an appeal from the sentence imposed on remand for resentencing following our opinion in *People v. Lewis* (Aug. 23, 2011, E051058) (nonpub. opn.) (*Lewis I*).

During the pendency of this appeal, the California Supreme Court issued its opinion in *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*). Pursuant to that opinion, we conclude that Penal Code section 654[1] bars imposition of unstayed sentences on both count 1 and count 4, for possession of a firearm by a convicted felon and for receiving stolen property, consisting solely of the same firearm.

Also during the pendency of this appeal, the electorate amended the three strikes law by passing Proposition 36, the Three Strikes Reform Act of 2012, effective November 7, 2012. Defendant contends that the amendment to sections 667 and 1170.12, which would reduce his sentence from 25 years to life to a far lesser determinate term, applies to him under the doctrine of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), i.e., that an amendatory statute which reduces punishment applies in all cases not yet final on appeal, unless there is a clear indication that the enacting body did not so intend. As we discuss below, we agree.

---

[1] All statutory citations refer to the Penal Code unless another code is specified.

# BACKGROUND

In *Lewis I*, we reversed the conviction on count 3, possession of ammunition by a convicted felon (§ 12316, subd. (b)(1)), and remanded for further proceedings on count 3 and for resentencing on counts 1 and 4. In count 1, defendant was convicted of being a convicted felon in possession of a firearm (former § 12021, subd. (a)); in count 4, defendant was convicted of receiving or possessing stolen property (§ 496, subd. (a)). (*Lewis I*, *supra*, E051058 [at p. 2].) The trial court had sentenced defendant, under the three strikes law (§§ 667, subd. (c)(6), 1170.12, subd. (a)(6)), to consecutive terms of 25 years to life on counts 1 and 4, believing that it had no discretion to do otherwise. We held that the court did have the discretion to impose either concurrent or consecutive terms. (*Lewis I*, *supra*, E051058 [at pp. 22-23].)

Our remand order directed the district attorney to determine, within 30 days after the opinion became final, whether to retry defendant on that count. The remand order further stated, "If the district attorney elects not to retry defendant on count 3, the court shall dismiss count 3 and hold a new sentencing hearing within 30 days following the district attorney's election, to determine whether to impose consecutive or concurrent sentences on counts 1 and 4." (*Lewis I*, *supra*, E051058 [at p. 26].)

The district attorney elected not to retry defendant, and the court dismissed count 3. At the resentencing hearing, the court again imposed consecutive sentences of 25 years to life on counts 1 and 4.

Defendant filed a timely notice of appeal.

3

# DISCUSSION

## 1.

## SECTION 654 BARS IMPOSITION OF SENTENCE ON BOTH COUNT 1 AND COUNT 4

Section 654, subdivision (a), provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." At its simplest, "section 654 proscribes double punishment for multiple violations of the Penal Code based on the 'same act or omission.'" (*People v. Siko* (1988) 45 Cal.3d 820, 822.)

In this case, the same firearm was the subject of both count 1 and count 4—that is, defendant was convicted of illegally possessing the firearm both because of his status as a convicted felon and because he knew that the firearm was stolen. In *Lewis I*, *supra*, E051058, we rejected defendant's claim that section 654 bars imposition of sentence on both count 1 and count 4. We based our opinion primarily on *In re Hayes* (1969) 70 Cal.2d 604. (*Lewis I*, *supra*, [at pp. 19-21].) We noted that a similar issue was then under review in *Jones*, *supra*, 54 Cal.4th 350, review granted Mar. 24, 2010, S179552. (*Lewis I*, *supra*, [at p. 21, fn. 11].)

On June 21, 2012, after the parties had filed their briefs in this case, the Supreme Court issued its opinion in *Jones*, *supra*, 54 Cal.4th 350. *Jones* involved a convicted felon who was found with a loaded firearm concealed in the door panel of the car he was

driving. The firearm was not registered to him. (*Id*. at p. 352.) The court held that the defendant could be punished only once for the three crimes of which he was convicted based on the single physical act of possessing a single firearm: possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public. (*Id*. at pp. 352, 360.) The court confirmed that "[s]ection 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*Jones*, at p. 358.) It overruled *In re Hayes*, *supra*, 70 Cal.2d 604, and held that "a single possession or carrying of a single firearm on a single occasion may be punished only once under section 654." (*Jones*, at pp. 357-358, 360.)

We directed the parties to submit supplemental briefing as to the effect, if any, of *Jones*, *supra*, 54 Cal.4th 350, on this case. The parties agree that *Jones* and section 654 preclude imposition of sentence on both count 1 and count 4, and we concur. We will remand the cause for resentencing, with directions to stay the sentence imposed on either count 1 or count 4.[2]

---

[2] Our determination that defendant's sentence must be modified to stay the sentence imposed on count 1 or count 4 obviates the need to address the contention raised in defendant's opening brief, i.e., that despite our holding in *Lewis I*, the trial court continued to believe that it had no discretion to impose concurrent rather than consecutive terms on counts 1 and 4. It similarly renders defendant's petition for writ of habeas corpus (*In re Lewis*, E056109) moot. We will address the petition by separate order.

2.

DEFENDANT MUST BE SENTENCED UNDER SECTION 667(e)(2)(C)

*1. Proposition 36*

While this appeal was pending, voters passed Proposition 36, the Three Strikes Reform Act of 2012 (hereafter the Reform Act or the act).  The Reform Act became effective on November 7, 2012.  (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C), 1170.126.)[3]  We granted defendant's request for supplemental briefing on the effect of the Reform Act.

Under the three strikes law as it existed before the passage of the Reform Act, a defendant with two or more strike priors who is convicted of any new felony would receive a sentence of 25 years to life.  (Former § 667(e)(2)(A).)  As amended, section 667 provides that a defendant who has two or more strike priors is to be sentenced pursuant to paragraph 1 of section 667(e)—i.e., as though the defendant had only one strike prior—if the current offense is not a serious or violent felony as defined in

---

[3]  For convenience, we will dispense with the use of "subdivision" in referring to statutes.  We will also refer solely to section 667(e) in discussing the Reform Act, omitting reference to the substantially identical section 1170.12(c).  However, the analysis applies to both section 667 and section 1170.12.

section 667.5(c) or section 1192.7(c), unless certain disqualifying factors are pleaded and proven.[4]  (§§ 667(d)(1), (e)(2)(C).)

---

[4]  Section 667(e)(2)(C) provides that second-strike sentencing does not apply if the prosecution pleads and proves any of the following:

"(i) The current offense is a controlled substance charge, in which an allegation under Section 11370.4 or 11379.8 of the Health and Safety Code was admitted or found true.

"(ii) The current offense is a felony sex offense, defined in subdivision (d) of Section 261.5 or Section 262, or any felony offense that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290 except for violations of Sections 266 and 285, paragraph (1) of subdivision (b) and subdivision (e) of Section 286, paragraph (1) of subdivision (b) and subdivision (e) of Section 288a, Section 311.11, and Section 314.

"(iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.

"(iv) The defendant suffered a prior serious and/or violent felony conviction, as defined in subdivision (d) of this section, for any of the following felonies:

"(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

"(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

"(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

"(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

"(V) Solicitation to commit murder as defined in Section 653f.

"(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

The Reform Act also provides a procedure which allows a person who is "presently serving" an indeterminate life sentence imposed pursuant to the three strikes law to petition to have his or her sentence recalled and to be sentenced as a second-strike offender, if the current offense is not a serious or violent felony and the person is not otherwise disqualified. The trial court may deny the petition even if those criteria are met, if the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126(a)-(g).) Accordingly, under section 1170.126, resentencing is discretionary even if the defendant meets the objective criteria (§ 1170.126(f), (g)), while sentencing under section 667(e)(2)(C) is mandatory, if the defendant meets the objective criteria.

The parties agree that neither defendant's current offenses—possession of a firearm by a convicted felon and receiving stolen property—nor his two robbery-strike priors, disqualify him for resentencing pursuant to section 667(e)(2)(C).[5] Defendant contends, therefore, that upon remand for resentencing, the trial court must sentence him pursuant to section 667(e)(2)(C). He contends that section 667(e)(2)(C) is an ameliorative sentencing statute which presumptively applies to all criminal judgments which were not yet final as of its effective date, and that there is nothing in the language of the Reform Act which overcomes the presumption. The Attorney General contends

---

[5] Defendant's strike prior in San Bernardino County case No. SCR51536 is for robbery with no enhancements. (§ 211.) His second strike prior in Los Angeles County case No. NA00841, is for robbery with an enhancement for personal use of a firearm. (§§ 211, 12022.5.) Neither such offense disqualifies him for sentencing pursuant to section 667(e)(2)(C).

8

that section 667(e)(2)(C) applies, prospectively only, to defendants who are first sentenced on or after November 7, 2012. She contends that it does not apply to defendant because he is "presently serving a third-strike sentence" within the meaning of section 1170.126(a), and that his only remedy is to petition for relief under that statute.

   2. *Section 667(e)(2)(C) Applies to Defendants Whose Judgments Were Not Yet Final on the Effective Date of the Reform Act.*

   There is a general rule of statutory construction, embodied in section 3 of the Penal Code, that "'when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively.' [Citation.]" (*People v. Floyd* (2003) 31 Cal.4th 179, 184 (*Floyd*).) In *Estrada*, *supra*, 63 Cal.2d 740, the California Supreme Court created a limited exception to that presumption. In that case, the court held that where a statute has been amended to lessen the punishment for an offense and there is no clear indication of an intent to apply the amendment prospectively only, it must be presumed that the Legislature intended the mitigated punishment to apply to all judgments not yet final as of the effective date of the amended statute. (*Id.* at pp. 744-747.) The court held, "'A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.'" (*Id.* at 745.) From this, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be

9

sufficient should apply to every case to which it constitutionally could apply," including those which are not yet final. (*Ibid*.)

The Legislature has never abrogated the *Estrada* rule. (See *People v. Nasalga* (1996) 12 Cal.4th 784, 792, fn. 7 (*Nasalga*).) The rule and its continued vitality were most recently discussed by the California Supreme Court in *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*).) In *Brown*, the court reiterated that *Estrada* "is today properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by *articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments.*" (*Id*. at p. 324, italics added.)

Despite the *Estrada* presumption, however, a court interpreting a statute which ameliorates punishment must nevertheless determine the intent of the Legislature or of the electorate in enacting the statute. (*Floyd*, *supra*, 31 Cal.4th at p. 184.) To determine intent, courts look first to the language of the provision, giving its words their ordinary meaning. If that language is clear in relation to the problem at hand, there is no need to go further. (*Ibid*.) If the language is not clear, the tools of statutory construction must be applied, including but not limited to the *Estrada* rule. If necessary, the court must also look to other extrinsic indicators of intention. (*Nasalga*, *supra*, 12 Cal.4th at p. 794.)

10

There is no question that section 667(e)(2)(C) is an amendment which ameliorates punishment under the three strikes law for those defendants who meet its criteria. However, the Reform Act does not contain any explicit provision for retroactive or prospective application, and it does not explicitly state what remedy—i.e., section 667(e)(2)(C) or section 1170.126—applies to a person in defendant's position. Consequently, we must "look for any other indications" to determine and give effect to the intent of the electorate. (*Nasalga*, *supra*, 12 Cal.4th at p. 794.)

In enacting new laws, both the Legislature and the electorate are "presumed to be aware of existing laws and judicial construction thereof." (*In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.) Accordingly, we presume that in enacting the Reform Act, the electorate was aware of the *Estrada* presumption that a law ameliorating punishment applies to all judgments not yet final on appeal on the effective date of the new statute. We also presume that the electorate was aware that a saving clause may be employed to make it explicit that the amendment is to apply prospectively only, and that in the absence of a saving clause or another clear signal of intent to apply the amendment prospectively, the statute is presumed to apply to all nonfinal judgments. (*Nasalga*, *supra*, 12 Cal.4th at p. 793; *Estrada*, *supra*, 63 Cal.2d at p. 747.) Previous ballot initiatives have employed explicit language making an ameliorative statute prospective. For example, the California Supreme Court held that the previous Proposition 36, approved by voters on November 7, 2000, applied prospectively only, despite its ameliorative effect, because it expressly stated, "Except as otherwise provided, the

11

provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively." (*Floyd*, *supra*, 31 Cal.4th at pp. 183-185.) The court in *Floyd* held that the plain language of this saving clause trumped any other possible interpretation of the proposition. (*Id.* at pp. 185-187.) In the Reform Act, in contrast, the absence of such language is persuasive evidence that the electorate did intend to apply section 667(e)(2)(C) to nonfinal judgments.

This construction, moreover, is fully consistent with the expressed purposes of the Reform Act. In *Floyd*, the court found further support in the ballot arguments in support of the proposition, which stated that "[i]f Proposition 36 passes, non-violent drug offenders *convicted for the first or second time after 7/1/2000*, will get mandatory, court-supervised treatment instead of jail." (Ballot Pamp., Gen. Elec. (Nov. 7, 2000) argument in favor of Prop. 36, p. 26, cited in *Floyd*, *supra*, 31 Cal.4th at pp. 187-188, italics added.) The ballot arguments in support of the Reform Act stated that its purpose was to ensure that "[p]recious financial and law enforcement resources" were not diverted to impose life sentences for some non-violent offenses, while assuring that violent repeat offenders are effectively punished and not released early. The proponents stated that the act would "help stop clogging overcrowded prisons with non-violent offenders, so we have room to keep violent felons off the streets" and "help[] ensure that prisons can keep dangerous criminals behind bars for life." An additional purpose was to save taxpayers "$100 million every year" by ending wasteful spending on housing and health care costs for "non-violent Three Strikes inmates." Moreover, the act would ensure adequate

12

punishment of non-violent repeat offenders by doubling their state prison sentences. The proponents pointed out that dangerous criminals were being released early because "jails are overcrowded with non-violent offenders who pose no risk to the public." And, the proponents stated that by passing Proposition 36, "California will retain the toughest recidivist Three Strikes law in the country but will be fairer by emphasizing proportionality in sentencing and will provide for more evenhanded application of this important law." The proponents pointed out that "[p]eople convicted of shoplifting a pair of socks, stealing bread or baby formula [*sic*] don't deserve life sentences." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36 and rebuttal to argument against Prop. 36, <http://voterguide.sos.ca.gov/propositions/36/arguments-rebuttals.htm>.)

Applying section 667(e)(2)(C) to nonfinal judgments is wholly consistent with these objectives, in that doing so would enhance the monetary savings projected by the proponents and would further serve the purposes of reducing the number of non-violent offenders in prison populations and of reserving the harshest punishment for recidivists with current convictions for serious or violent felonies, while still assuring public safety by imposing doubled prison terms on less serious repeat offenders.

For both of these reasons—the absence of any expressed intent to apply the act prospectively only and the stated intent underlying the proposition—we conclude that section 667(e)(2)(C) applies to judgments which were not final as of its effective date.

The sole published appellate decision to date which addresses this issue is *People v. Yearwood* (2013) 213 Cal.App.4th 161.[6] In *Yearwood*, as in this case, the defendant would have been entitled to second-strike sentencing under the Reform Act if he had been sentenced initially after the effective date of the Reform Act. He had already been sentenced and his appeal was pending on the date the act became effective. The court held that even though the judgment was not yet final, Yearwood's only remedy was to petition for recall of his sentence and for resentencing pursuant to section 1170.126. (*Id*. at pp. 167, 168, 169.)

The court held, as we have, that the Reform Act does not contain a saving clause or refer to retroactive or prospective application or refer explicitly to persons in Yearwood's position. Nevertheless, the court held, section 1170.126 unambiguously applies to prisoners whose judgments were not final on the Reform Act's effective date, because those prisoners were "presently serving" an indeterminate life term under the three strikes law. (See § 1170.126(a).) The court held that section 1170.126 therefore effectively operates as the functional equivalent of a saving clause and, if section 667(e)(2)(C) is read not in isolation but in the context of the entire statutory scheme, it is clear that the mandatory sentencing provision of section 667(e)(2)(C) is intended to operate prospectively only. (*Yearwood*, *supra*, 213 Cal.App.4th at p. 175.)

---

[6] As of this date, a petition for review is pending. (*Yearwood*, *supra*, 213 Cal.App.4th 161 (petn. for review filed Mar. 6, 2013, S209069). )

14

*Yearwood* is correct that even in the absence of an express saving clause there may be other reasons to determine that the enacting body intended the statute to apply prospectively only. *Brown*, *supra*, 54 Cal.4th 314, provides an example. In that case, the court held that an amendment to section 4019 which increased the rate at which prisoners may earn credits for good behavior applied prospectively only, despite the absence of express language to that effect, because the purpose of section 4019 is to provide an incentive for good behavior during incarceration. Accordingly, rather than reflecting a determination that a reduced penalty for *past* criminal conduct satisfies the legitimate ends of criminal law, section 4019 addresses "*future conduct* in a custodial setting by providing increased incentives for good behavior." (*Brown*, at p. 325.) Awarding the credit retroactively, for time spent in custody before the effective date of the amendment, would not further that purpose. Consequently, the court held, there is no logical basis for inferring that the Legislature intended the amended statute to apply retroactively, and the *Estrada* rule does not apply. (*Id.* at p. 325 & fn. 15.) The same is not true of the Reform Act, however. As we discussed above, retroactive application of section 667(e)(2)(C) is consistent with the proponents' stated objectives of reducing prison overcrowding, reducing the resources expended on third-strike offenders whose current and prior offenses are non-violent and less serious, and enhancing public safety by ensuring that the truly dangerous repeat offenders serve indeterminate life terms less. (More about this below.) Accordingly, there is a logical basis for inferring that the electorate intended the amendment to apply to nonfinal judgments.

15

Moreover, we do not agree with *Yearwood* that section 1170.126 unambiguously applies to defendants who were serving nonfinal third-strike sentences on the effective date of the Reform Act. In light of the *Estrada* presumption and the absence of a saving clause in section 667(e)(2)(C), the provision that section 1170.126(a) applies "exclusively to persons presently serving" a third-strike sentence *is* ambiguous—does it refer only to prisoners serving sentences which are final, or does it include those whose judgments are not final? It is certainly not so clear as to qualify as the functional equivalent of a saving clause. In *Nasalga*, *supra*, 12 Cal.4th 784, the California Supreme Court held that the rule of *Estrada* is "not implicated where the Legislature *clearly signals* its intent" to make an amendment prospective, "by the inclusion of either an express saving clause or its equivalent." (*Nasalga*, at p. 793, italics added.) The court did not describe what constitutes an "equivalent" to an express saving clause. However, the court stated that in the absence of an express saving clause, the "'quest for legislative intent'" requires that "'the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' [Citation.]" (*Ibid.*) In our opinion, the statutory language that *Yearwood* relies on does not meet that requirement because it is ambiguous. We note, too, that *Yearwood* does not cite a single case in which similarly ambiguous language was deemed to be the equivalent of a saving clause.

*Yearwood* finds support for its position in the ballot arguments in favor of the Reform Act. It points out that enhancing public safety was a key purpose of the act. (*Yearwood*, *supra*, 213 Cal.App.4th at p. 175.) The court states that giving section

16

667(e)(2)(C) prospective-only application furthers that purpose by reducing the likelihood that prisoners who are currently dangerous will be released from prison under the Reform Act. In contrast with section 1170.126, section 667(e)(2)(C) does not provide the court with discretion to impose a third-strike sentence if it finds that the defendant poses an "unreasonable risk of danger to public safety." (§ 1170.126(f).) *Yearwood* points out that several years may elapse between sentencing and finality, and a defendant who might objectively qualify for second-strike sentencing under section 667(e)(2)(C) may have shown him- or herself to pose such a risk by misconduct during post-sentencing incarceration. (*Yearwood*, at pp. 175-176.)

This is arguably a valid concern. However, it is not reflected in the ballot arguments in support of the Reform Act. We cannot say that a concern not expressed in a ballot argument is a clear indication of voter intent, no matter how valid the concern may be. Moreover, a defendant may also be incarcerated for many months before being convicted and sentenced for a third-strike offense. Such a defendant may also display a propensity for violence or other conduct while incarcerated which indicates that he or she poses a risk to public safety. Nevertheless, any qualifying defendant convicted and sentenced after the effective date of the Reform Act is entitled to sentencing under section 667(e)(2)(C), and the trial court has no discretion to impose a third-strike sentence even if the court has concerns about the defendant's future dangerousness for any reason, including the defendant's conduct while in custody. For this reason as well, we do not find *Yearwood*'s analysis persuasive.

17

*3. Conclusion*

We conclude that in passing the Three Strikes Reform Act of 2012, the electorate intended the mandatory sentencing provision of sections 667(e)(2)(C) and 117012(c)(2)(C) to apply to qualifying defendants whose judgments were not yet final on the effective date of the act. Accordingly, we do not need to address defendant's other arguments as to why the act should apply to him.

### DISPOSITION

The cause is remanded. The superior court is directed to hold a resentencing hearing within 30 days after finality of this opinion. The superior court is directed to impose sentence pursuant to Penal Code sections 667(e)(2)(C) and 1170.12(c)(2)(C) and to stay imposition of sentence on either count 1 or count 4 pursuant to Penal Code section 654. The superior court is directed to issue an amended abstract of judgment reflecting the sentence as modified and to provide a copy of the amended abstract to the parties and to the Department of Corrections and Rehabilitation within 30 days after resentencing.

The judgment is otherwise affirmed.


McKINSTER_____
J.

We concur:


HOLLENHORST_____
Acting P. J.

CODRINGTON_____
J.

18

Filed 5/15/13

CERTIFIED FOR PARTIAL PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL LEWIS,<br><br>     Defendant and Appellant. | E055569<br><br>(Super.Ct.No. FVI900076)<br><br>**ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION AND MODIFYING OPINION**<br><br>[NO CHANGE IN JUDGEMENT] |

THE COURT

On the court's own motion, the above-entitled unpublished opinion filed April 26, 2013, meets the standards for partial publication as specified in California Rules of Court, rule 8.1105(c)(4), (c)(5), and (c)(6).

Therefore, the opinion is certified for partial publication, with the exception of "section I." of the opinion (located on pages 4-5).

Additionally, the opinion filed in this matter is modified as follows:

On page 4, under discussion, replace heading "1." with "I."

On page 6, replace heading "2." with "II."

On page 14, delete footnote 6, and replace the first sentence on page 14 to read:

1

The first published appellate decision which addresses this issue is *People v. Yearwood* (2013) 213 Cal.App.4th 161 (review den. May 1, 2013, S209069).

On pages 17-18, add the following paragraph as the last paragraph in section II.2., to read as follows:

A second published opinion on this issue, *People v. Conley* (May 2, 2013, C070272) ___ Cal.App.4th ___ [2013 WL 1833251], also holds that section 1170.126 applies to all defendants serving indeterminate three strikes sentences, regardless of the finality of the judgment, and thus "defeats the presumption of retroactivity set forth in *Estrada*." (*Id.* at pp. 4-6.) *Conley*'s reasoning is similar to *Yearwood*'s, and we find it unpersuasive as well.

These modifications do not effect a change in the judgment.

CERTIFIED FOR PARTIAL PUBLICATION


McKINSTER_____
                                                            J.

We concur:



HOLLENHORST_____
            Acting P. J.



CODRINGTON_____
                        J.




2